[Civ. No. 406. Fourth Appellate District.—July 15, 1931.]

RALPH M. SAWYER, Respondent, v. GEORGE F. NEL-
SON et Ux., Appellants.

Kenneth J. Murphy and Hugh A. Sanders for Appellants.

Stearns, Luce & Forward and Fred Kunzel for Respondent.

MARKS, J.—This action grew out of an automobile collision happening about 5 o'clock in the afternoon of December 31, 1927, at the corner of Cedar and Dale Streets in the city of San Diego. The case was tried before the court without a jury. A judgment was rendered in favor of respondent in the sum of $14,000.

Appellants present various grounds upon which they urge a reversal of the judgment. These may be consolidated under four heads which may be stated as follows: First, that the evidence is insufficient to support the judgment; second, that the evidence shows contributory negligence as a matter of law on the part of respondent; third, that the damages awarded are excessive; and, fourth, that the court erred in denying appellants' motion for a new trial. We will consider the first two grounds together.

As is very frequently the case in actions of this kind, the evidence offered by the respective parties is sharply conflicting. Had the trial court found in favor of appellants there would have been ample evidence to support such a finding. However, as it found in favor of respondent, it will only be necessary for us to discuss such portions of the record as are most favorable to him.

The evidence discloses that Cedar and Dale Streets intersect each other at right angles. Just prior to the accident, respondent was driving a Ford delivery truck south on Dale Street approaching its intersection with Cedar Street.

When he was between thirty and forty feet northerly from the north line of Cedar Street he saw Marie J. Nelson on Cedar Street at a point between sixty and seventy feet east from the easterly property line of Dale Street. She was approaching westerly on Cedar Street at a speed of between thirty and thirty-five miles per hour. When he saw the Nelson car approaching the intersection respondent applied his brakes and reduced his speed until he was traveling less than fifteen miles per hour as he reached the northerly line of the intersection. At this time Mrs. Nelson had reached a point about twenty feet from the intersection and had greatly reduced the speed of her automobile. She testified that, "I slowed up so I was almost to a dead stop. Then I started to go across the street." Respondent, seeing the speed of the other automobile so greatly reduced proceeded on his way across the intersection, believing that Mrs. Nelson was stopping to yield the right of way to him. Instead of stopping, Mrs. Nelson accelerated the speed of her car and entered the intersection. Respondent, seeing that a collision was imminent, swung his automobile to his right and Mrs. Nelson swung her car to her left, its right side coming into contact with the left side of the Ford truck in what is commonly called a "side swipe". The point of the collision was about fifteen feet westerly from the center of the intersection. Both automobiles proceeded toward the south curb line of Cedar Street, the front wheels of respondent's truck mounting the curb. The truck turned over on its side throwing respondent over the windshield and on to the pavement, where his right leg was broken in three places.

Respondent entered the intersection first. Mrs. Nelson approached the intersection from his left. Section 131 of the California Vehicle Act (Stats. 1925, p. 398), in effect at the time of this accident, provides in part as follows: "When two vehicles approach an intersection of public highways at approximately the same time, the vehicle approaching from the right shall have the right of way, provided such vehicle is traveling at a lawful speed."

A statement of the foregoing facts effectively refutes appellants' contentions that the evidence is insufficient to support the judgment and that respondent was guilty of contributory negligence as a matter of law. As respondent entered the intersection first at a lawful speed, and as Mrs.

Nelson was approaching from his left and had brought her car almost to a standstill twenty feet from the intersection, the question of what an ordinarily prudent person should have done under these circumstances, and the question of her negligence and the contributory negligence of respondent, were questions of fact to be determined by the trial court. It having resolved these questions in favor of respondent, its findings are conclusive and cannot be disturbed by this court.

■ Appellants next complain that the amount of damages awarded were so excessive that they indicated passion and prejudice and a disregard of the evidence on the part of the trial court. The evidence discloses that respondent's ankle was badly broken and his right femur broken in two places. He was removed from the place of the accident to a hospital, where his fractures were reduced and a rigid cast was placed upon him extending from his waist to the extremity of his right leg. He was compelled to wear such a cast continually thereafter. He remained in the hospital until June 22, 1928. He returned to the hospital during the month of September, 1928, and again in February, 1929. He was compelled to again return to the hospital in May, 1929, where he remained for six weeks as the femur had failed to unite. During his last hospital confinement he was required to undergo a bone-grafting operation. At the time of the trial in August, 1929, he was still in the cast and the court found that he would be required to wear it for a period of at least four additional months. Respondent faces the possibility, if not the probability, of being required to undergo a second bone-grafting operation which will cost him at least $1,000. His right leg is shortened so that it will be one or more inches shorter than normal during the remainder of his life. It was stipulated at the trial that he had incurred bills for medical attention, hospital care, X-ray and other services as a result of his injuries in the sum of $2,010.60. He also suffered pain from the time of the injury on December 31, 1927, to the time of the trial in August, 1929, and faced the prospect of further suffering over a considerable period of time.

Under the facts of this case we cannot conclude that the damages awarded were excessive in view of the rule in California, applicable here, which is set forth in the case of

*Cosey* v. *Los Angeles Ry. Corp.,* 192 Cal. 265 [219 Pac. 978, 980], as follows:

"There is a multitude of authorities in this state to the effect that in actions for damages for personal injuries, where the amount of the award is left to the sound discretion of the jury, or of the court if the case is tried without a jury, the award made in the trial court is conclusive on appeal unless the amount appears to have been given under the influence of passion or prejudice. . . . 'If a motion for a new trial upon this ground is denied by the trial court, we cannot reverse the judgment unless the amount thereof is "so plainly and outrageously excessive as to suggest, at the first blush, passion or prejudice or corruption on the part of the jury".' (*Hale* v. *San Bernardino etc. Co.,* 156 Cal. 713 [106 Pac. 83].)

Appellants' motion for a new trial was made upon several grounds, one being newly discovered evidence supported by an affidavit of George F. Nelson. This affidavit fails to disclose that appellant used any great amount of diligence in attempting to discover and produce the witnesses mentioned therein. More than fifteen months elapsed between the filing of the complaint and the trial of the action. During this time appellants knew they were being sued for damages resulting from the injuries to respondent and they should have been diligent in discovering their witnesses and producing them at the trial. However, we prefer to base our conclusions upon grounds other than their apparent lack of diligence.

Respondent produced Glenn Kennet Rose, a taxi driver, as a witness in his behalf. Rose testified that just prior to the accident he was driving his taxicab south on Dale Street about fifty feet in the rear of respondent's truck and that he witnessed the accident, reaching the place where Mrs. Nelson's automobile and the truck came to rest a few seconds after the collision. According to the affidavit of George F. Nelson, all of the newly discovered witnesses were expected to testify that Rose did not reach the scene of the accident until four or five minutes after it happened. In addition, two of the witnesses, whose names are not disclosed in the affidavit, they being described as newsboys who at the time of the making of the affidavit were residing in New York City, were expected to testify that they arrived at the

scene of the collision between one and two minutes after it occurred and that Rose was not then at the scene of the accident, and further that they heard respondent say, "That the accident was caused by his going too fast, that he was unable to swerve his car to the left and go behind the defendants' automobile and thus avoid an accident." Appellant Marie J. Nelson and her son Maxwell Nelson both testified to this alleged statement. Both these witnesses, together with a third witness, testified that Rose did not appear at the place of the accident until four or more minutes after the collision. It is immediately apparent that the evidence sought to be obtained from the newly discovered witnesses was solely impeaching and cumulative.

Newly discovered evidence that is merely impeaching, and an impeachment of evidence offered at the trial, does not furnish any ground for the granting of a new trial. (*Estate of Baird,* 198 Cal. 490 [246 Pac. 324] ; *Waer* v. *Waer,* 189 Cal. 178 [207 Pac. 891].) The rule is clearly stated in 20 Cal. Jur. 98, as follows:

"Newly discovered evidence designed merely to impeach or contradict the testimony of adverse witnesses, or which has only that effect, is not of a character to warrant a new trial. Nor will a new trial be granted because of the discovery of new evidence which, if produced, would only tend to impair the credibility of the evidence given, or to contradict a witness of the opposing party, or where the only value of newly discovered testimony is as impeaching evidence. Thus a new trial is properly denied where the new evidence consists of a written statement made by one of the principal witnesses for the adverse party which varied in material respects from his testimony subsequently given at the trial.

"Evidence of a statement of a party contradicting a fact he had testified to upon the trial is impeaching and not sufficient to warrant a new trial."

The rule regarding newly discovered cumulative evidence is stated in 20 California Jurisprudence, at page 94, as follows: "Newly discovered evidence which is merely cumulative affords no ground for a new trial, unless it is clear that such evidence, notwithstanding its cumulative character, is of sufficient probative force to render probable a different result upon a retrial of the case, in which event it not only warrants, but may require, an order granting a

new trial. In accord with this rule it is clearly not an abuse of discretion to refuse a new trial where the new evidence is merely cumulative.'' (*Smith* v. *Lombard,* 201 Cal. 518, [258 Pac. 55]; *Parker* v. *Southern Pac. Co.,* 204 Cal. 609 [269 Pac. 622]; *Robinson* v. *McKnight,* 103 Cal. App. 718 [284 Pac. 1056].)

In the instant case we cannot conclude that the newly discovered evidence of the two newsboys, which was merely cumulative and impeaching, was of sufficient weight to render probable a different result on a new trial and accordingly there was no abuse of discretion on the part of the trial court in denying the motion.

Judgment affirmed.

Barnard, P., J., and Griffin, J., *pro tem.,* concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on July 30, 1931.